[S. F. No. 5291. In Bank.—October 3, 1911.]

# GIUSEPPE LAURICELLA, and CONCELLA LAURICELLA, Respondents, v. MARINA LAURICELLA, Appellant.

CONSTRUCTIVE TRUST—DEED FROM HUSBAND TO WIFE—PAROL AGREEMENT BY WIFE TO CONVEY PART OF LAND TO HUSBAND'S PARENTS.— Where a husband conveys lands to his wife, by deed absolute on its face, in reliance upon an oral agreement between them that she would hold the same in trust for him during his lifetime, and that upon his death she would hold one half thereof as her own property and would convey the other half to his father and mother in equal shares, such deed having been made in reliance upon her devotion and fidelity to him, as his wife, and in the belief that she would faithfully execute the trust, as she agreed, and for no other consideration, and would not have been made except for her promise, a constructive trust arises in favor of the father and mother to a half interest in the land, which is enforceable against the wife after the death of her husband.

ID.—BREACH OF AGREEMENT BY WIFE—CONSTRUCTIVE FRAUD.—The conduct of the wife, under such circumstances, in accepting the deed upon her promise to convey to the father and mother of the grantor, and thereafter refusing to fulfill that promise, constituted a constructive fraud sufficient to create the constructive trust.

ID.—STATUTES PROHIBITING EXPRESS TRUST TO CONVEY LAND NOT APPLICABLE TO CONSTRUCTIVE TRUST.—The several provisions of the Civil Code on the subject of trusts must be considered together in order to arrive at their true meaning. So considered, it is apparent that the provisions of sections 847 and 857, which have been judicially declared to forbid an express trust to convey land to a third person, have no application to trusts created by operation of law.

ID.—CREATION OF CONSTRUCTIVE TRUST—BREACH OF PROMISE TO CONVEY LAND.—In order to create a constructive or involuntary trust, as the same is defined in section 2224 of the Civil Code, no conditions other than those stated in that section are necessary. Under that section, the mere fact that the broken promise, constituting one of the elements whereby an involuntary trust is created, is a promise to convey land, either to the original owner or to a third person, is not a valid objection to the recognition and enforcement of such involuntary trust at the suit of the person who was intended by the donor to be the beneficiary.

ID.—CONSTRUCTIVE TRUST TO CONVEY LAND NOT AGAINST PUBLIC POLICY. —The enforcement of an involuntary trust will not be deemed

against public policy, although the effect is to indirectly carry out a trust to convey land.

ID.—UNCERTAINTY OF CONSTRUCTIVE TRUST—ABSENCE OF DIRECTION AS TO USE OF LAND DURING LIFE OF DONOR.—Such constructive trust is not invalid for uncertainty, under section 2221 of the Civil Code, because no provision was made in regard to what was to be done with the property during the lifetime of the donor. That section relates exclusively to the requirements as to express trusts created by writing and otherwise valid under section 857.

ID.—GIFT OF COMMUNITY PROPERTY—ESTOPPEL OF WIFE TO QUESTION VALIDITY.—Where a portion of the lands so conveyed was community property, which upon the death of the husband intestate, and in the absence of such conveyance, would have vested three fourths in the wife and one fourth in the donor's father and mother, the wife, by claiming the entire estate under the deed, is estopped from asserting its invalidity as to such one fourth, for the reason that the husband, under section 172 of the Civil Code, was prohibited from making a gift of community property, or conveying the same without a valuable consideration, without the written consent of the wife.

ID.—CONDUCT OF WIFE CREATING ESTOPPEL—DEED IN LIEU OF TESTAMENTARY DISPOSITION.—Although the husband had not power to make a gift of any part of the community property without the wife's written consent, yet he had the power, under section 1402 of the Civil Code, without her consent to make a will giving one half of it to his father and mother; and the wife, by her conduct in consenting to the arrangement made at the time of the execution of the deed, which was intended by the donor in lieu of a testamentary disposition, is estopped from questioning the power of the donor thus to effectuate his intention without her consent in writing.

ID.—PLEADING—ANSWER SETTING UP COMMUNITY CHARACTER OF LAND—ESTOPPEL NEED NOT BE SPECIALLY PLEADED.—In the action by the father and mother, to enforce such constructive trust, allegations in the answer of the wife setting up the community character of the property, authorize the plaintiffs to rely on such estoppel, without pleading it specially.

ID.—DEPOSITION—EXCLUSION OF THIRD PERSONS—APPEAL—DISCRETION.—The refusal of the trial court to direct the officer who is taking a deposition to exclude other persons while a witness was giving his testimony, will not justify a reversal on appeal of a judgment on the merits, unless an abuse of discretion be shown and substantial prejudice appears probable.

ID.—EVIDENCE—STATEMENTS OF HUSBAND TO WIFE—ADMISSIONS OF WIFE.—In such action, statements made by the grantor, to his wife, in the presence of third persons, a few weeks after the execution of the deed, stating in substance the terms of the original promise on which it was made to her, and her repetition of the promise, were

competent as evidence against her. And the same is true as to admissions to the same effect, made by the wife after the death of her husband.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

George C. Sargent, and Jos. F. Cavagnaro, for Appellant.

J. C. Sims, and J. A. Spinetti, for Respondents.

SHAW, J.—This is an action to establish and enforce an alleged constructive trust in land. Judgment was given for plaintiffs. Defendant moved for a new trial and the motion was denied. Defendant has appealed from the judgment and from the order denying a new trial.

The facts, as stated in the findings, are as follows: Domenico Lauricella on July 11, 1906, was the owner of the two parcels of land in question. The plaintiffs were, respectively, his father and mother. The defendant was his wife. He had no children. On the day mentioned he conveyed said lands, by deed absolute on its face, to his wife, in reliance upon an oral agreement between them that she would hold the same in trust for him during his lifetime, and that upon his death she would hold one half thereof as her own property and would convey the other half to his father and mother in equal shares. This conveyance was made in reliance upon her devotion and fidelity to him, as his wife, and in the belief that she would faithfully execute the trust stated, as she agreed to do, and but for her said promise the conveyance would not have been made. There was no other consideration for the conveyance. Domenico died intestate on September 10, 1906, leaving his said father, mother, and wife surviving. Thereupon the father and mother demanded of the wife, Marina, a conveyance of one half of said lands, which was refused, whereupon they began this action.

The defendant earnestly contends that the evidence does not sustain the findings. It is unnecessary to discuss this objection at length. A perusal of the record has satisfied us that the evidence is sufficient.

The main contention in support of the appeal is that the facts found do not show a valid trust under the laws of this state. The argument in this behalf is that, under the provisions of sections 847 and 857 of the Civil Code, no express trust in real estate can be created having for its object the conveyance of such real estate by the trustee to a third person, that the trust here attempted to be enforced is a trust for the specific and sole purpose of having Marina Lauricella, as trustee, convey one half of the real estate to the plaintiffs, that this is clearly an express trust to convey not permitted by said sections of the code, and, being contrary to the declared policy of the law, it must be held void, and that for the same reason it is not enforceable even as a constructive trust or a trust created by operation of law.

It was held by this court in *Estate of Fair,* 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], that an express trust, created by will or other writing, vesting the title to land in trustees, upon the trust that it shall be by them conveyed to third persons named in the instrument, is void under the aforesaid sections of the code. This decision has been repeatedly followed and must now be considered as the settled law of the state. (*Estate of Sanford,* 136 Cal. 98, [68 Pac. 494]; *Estate of Pichoir,* 139 Cal. 685, [73 Pac. 606]; *McCurdy* v. *Otto,* 140 Cal. 51, [73 Pac. 748]; *Hofsas* v. *Cummings,* 141 Cal. 527, [75 Pac. 110]; *Estate of Dixon,* 143 Cal. 513, [77 Pac. 412].) If the trust here asserted came within the principle of these decisions, or was one which fell within the scope of sections 847 and 857, unquestionably we should be compelled to say that it is void.

Defendant concedes that under the previous decisions of this court in *Nordholt* v. *Nordholt,* 87 Cal. 552, [22 Am. St. Rep. 268, 26 Pac. 599]; *Hayne* v. *Herman,* 97 Cal. 260, [32 Pac. 171]; *Simons* v. *Bedell,* 122 Cal. 341, [68 Am. St. Rep. 35, 55 Pac. 3], and *Cooney* v. *Glynn,* 157 Cal. 587, [108 Pac. 506], the facts found would be sufficient to establish a trust by operation of law which could be enforced by the father and mother of Domenico, as beneficiaries thereof. She claims, however, that those cases, except *Cooney* v. *Glynn,* were decided before the decision in *Estate of Fair, supra,* had established the proposition that an express trust to convey land was void, that in none of them was the exact point here presented

discussed or considered, and that the effect of the decision in the Fair case is to overthrow the previously established rule, so far as it allowed the enforcement of constructive trusts founded upon a parol agreement to convey to a third person as beneficiary of the donor. This theory, if allowed to prevail, would go much farther and would destroy a large ·class of constructive trusts heretofore deemed to be authorized by the principles of equity jurisprudence. In a large number of cases of this class the grantor is himself the beneficiary and the trust arises from the refusal of the grantee to perform a parol promise, given and received in the confidence induced by confidential relations, to reconvey to the grantor. *Brison* v. *Brison,* 75 Cal. 255, [7 Am. St. Rep. 189, 17 Pac. 689] ; s. c. 90 Cal. 323, [27 Pac. 186] ; *Adams* v. *Lambard,* 80 Cal. 426, [22 Pac. 180] ; *Alaniz* v. *Casenave,* 91 Cal. 43, [27 Pac. 521] ; *Hays* v. *Gloster,* 88 Cal. 560, [26 Pac. 367] ; *Butler* v. *Hyland,* 89 Cal. 575, [26 Pac. 1108], and *Jones* v. *Jones,* 140 Cal. 587, [74 Pac. 143], are instances in which constructive trusts of this character have been recognized and enforced. If the contention of the defendant were sound, the result would be that all these cases, as well as those first above cited, must be deemed erroneous. A great number of similar cases could be cited from other jurisdictions. Many of them will be found in the notes in 1 Perry on Trusts, sec. 181, and 3 Pomeroy's Equity Jurisprudence, secs. 1053, 1054, and 1055. Perry states the doctrine thus: "Courts of equity will not only interfere in cases of fraud, to set aside acts done, but they will also, if acts have by fraud been prevented from being done, interfere, and treat the case exactly as if the acts had been done; and this they will do, by converting the party who has committed the fraud, and profited by it, into a trustee for the *party in whose favor the act would otherwise have been done."* That the conduct of the wife in this case, in accepting the deed upon her promise to convey to the plaintiffs and thereafter refusing to fulfill that promise, constitutes at least constructive fraud sufficient to create the trust, is fully shown. by the discussion of the subject in *Brison* v. *Brison,* 75 Cal. 529, [7 Am. St. Rep. 189, 17 Pac. 689], and in the second appeal of the same case in 90 Cal. 329, 336, [27 Pac. 186].

When we consider the several provisions of the Civil Code on the subject together, as we must in order to arrive at their

CLXI Cal.—3

true meaning, it appears clear that the provisions of sections 847 and 857, which were declared by the decision in the Fair case to forbid an express trust to convey land to a third person, have no application to trusts created by operation of law. Section 847 declares that "Uses and trusts in relation to real property are those only which are specified in this title." Section 852 provides that no valid trust can be created, except 1. By a writing executed by the trustee; 2. By the conveyance to the trustee, or 3. "By operation of law." The first two of these modes constitute the means whereby all express trusts in land are created. Section 857 deals only with express trusts. The headline states its subject as follows: "For what purposes express trusts may be created." The section first declares that "Express trusts may be created for any of the following purposes." It then specifies four classes of express trusts distinguished by the different purposes to be accomplished. This section, in connection with section 847, gave rise to the doctrine of the Fair case that express trusts to convey are not permitted. But when the three sections are considered together, it is seen that section 857 refers directly to the first and second clauses of section 852, and not to the third clause, and hence that it is intended to apply to and limit the creation of express trusts in writing, and was not to be applied to trusts created by operation of law. The Fair case and all the decisions following it were instances of endeavors to enforce express trusts attempted to be created by writing. None of them involves a trust created by operation of law, or purports to declare any rule concerning such trusts. The subject of involuntary trusts, defined as a trust created by operation of law (sec. 2217), usually called constructive trusts, is again dealt with in section 2224 of the Civil Code. Its provisions show clearly that trusts by operation of law are left untouched by sections 847 and 857 and clauses one and two of section 852. Section 2224 describes the involuntary trust comprehensively as follows: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person *who would otherwise have had it."* If the intention had been to prevent involuntary trusts where the violation of an express promise to convey constitutes the

foundation, the fraud by which the thing is gained, the last clause should have been written: "for the benefit of the person *from whom it was gained.*" As it stands, it means the person who would have had it, but for the fraud or other wrongful act whereby it was gained. In cases of involuntary trusts such as that here involved, the fraud consists of the betrayal of confidence by refusing to carry out the parol trust induced by that confidence. (*Brison* v. *Brison,* 90 Cal. 335, [27 Pac. 186].) If the confidence by which the thing was gained had not been betrayed, the person to whom the promise ran, the one who was to receive it ultimately, would be the "person who would otherwise have had it." It necessarily follows that the mere fact that the broken promise, constituting one of the elements whereby an involuntary trust is created, is a promise to convey land, either to the original owner or to a third person, is not a valid objection to the recognition and enforcement of such involuntary trust at the suit of the person who was intended by the donor to be the beneficiary. No conditions other than those stated in section 2224 are necessary. If those conditions exist, the involuntary trust arises, although the transaction was entirely oral and consequently void as an express trust under sections 852, 1091, and 1624, and although the means of gaining the thing was the making of an oral or written promise to convey to some other person, or reconvey to the donor.

There is no real force in the argument that the enforcement of an involuntary trust is against public policy, where the effect is to indirectly carry out a trust to convey. The same argument was in early times earnestly made against the recognition of any trust created in parol; it being, as was contended, a violation of the statute of frauds forbidding the creation of an express trust in land other than by writing and the making of agreements *to* convey or conveyances of land except by writing. The exception in favor of trusts by operation of law is universally held to exclude from the operation of these statutes of fraud all "trusts which arise from fraud, actual or constructive—or, as they are termed, constructive trusts." (*Brison* v. *Brison,* 75 Cal. 527, [7 Am. St. Rep. 189, 17 Pac. 689]; *De Mallagh* v. *De Mallagh,* 77 Cal. 128, [19 Pac. 256]; *Broder* v. *Conklin,* 77 Cal. 337, [19 Pac. 513]; *Kimball* v. *Tripp,* 136 Cal. 634, 69 Pac. 428].) The principle of these

decisions is applicable to the case at bar. Express trusts to convey are forbidden for reasons similar to those which led to the statutory prohibition of express trusts created by parol and the conveyance of land except by writing, that is, to prevent confusion, uncertainty, frauds, and concealments, as well as perjuries, in relation to the disposition of real property. (*Estate of Fair*, 132 Cal. 527, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000].) The public policy which led to the inhibition of express trusts to convey is no more stringent or important than that which led to the other statutes mentioned. Neither is tainted with inherent immorality and neither involves a forbidden use of property. The same exception in favor of involuntary trusts, which are instituted to prevent frauds, should be allowed as in the conveyances of trusts in parol, and for like reasons.

There is a line of cases on which the appellant relies which we think are easily distinguishable from the case at bar. *O'Hara's Will*, 95 N. Y. 403, [47 Am. Rep. 53]; *Amherst College* v. *Ritch*, 151 N. Y. 282, [45 N. E. 876, 37 L. R. A., 305], and *Edson* v. *Bartow*, 154 N. Y. 215, [48 N. E. 541], are cases of this kind. In these decisions the rule is established that where the agreement of the person against whom the involuntary trust is to be enforced is to convey the property to a charity which the law forbids, or to apply it to uses which the law does not permit, or which are contrary to good morals, a court of equity will not specifically enforce the agreement to do the forbidden thing, nor suffer it to be done, but will declare the conveyance to the trustee void, absolutely, and enforce a trust in the property for the benefit of the donor, or his heirs at law. The statute forbidding the creation of express trusts in writing to convey to another the subject of the trust, is, as we have stated, based on considerations of convenience in the mere disposition of property and has no relation to the kind of use it is to be applied to, or to the public policy against certain charities, or to considerations of morality. It is to be classed with the statute of frauds and, as has been said with respect to the latter, it should not be made the means for the perpetration of a fraud.

The defendant cites *Wittfield* v. *Forster*, 124 Cal. 418, [57 Pac. 219], to the effect that, in order to be valid, a declaration of trust must be reasonably certain as to the purposes of the

trust, and suggests that this trust is uncertain because nothing appears in regard to what was to be done with the property in Domenico's lifetime; referring also to section 2221 of the Civil Code. This section and the case cited relate exclusively to the requirements as to express trusts created by writing and otherwise valid under section 857. They have no application to involuntary trusts. The latter are governed by the well known rule that they must be established by clear and convincing evidence.

The court found that one of the parcels of land was acquired by Domenico during his marriage with the defendant and that it was their community property. Section 172 of the Civil Code provides that the husband cannot make a gift of the community property, or convey the same without a valuable consideration, unless the wife, in writing, consents thereto. The defendant claims that this prevents the creation of a constructive trust through or by means of a voluntary deed of the community property by the husband to the wife. In this case this puts the wife in the position of claiming a quarter interest in this parcel under the husband's deed, because said deed is void. The husband having died childless, leaving his father and mother surviving, if this deed is void the law would vest in the wife three fourths of this parcel, one half in virtue of her community right and one fourth by descent as of separate estate, while the remaining fourth would go to the father and mother. (Civ. Code, sec. 1402; sec. 1386, subd. 2.) She can claim the last mentioned fourth only under this deed and, in view of the conclusions hereinbefore stated, only upon the ground that the deed is ineffectual to convey anything. If she accepts the grant at all, she must take it with the burden and upon the trust by means of which she received it. Her claim of the entire estate under the deed constitutes an effectual estoppel to prevent her from asserting in the same breath that the deed is invalid as to one fourth. (*White v. Stevenson*, 144 Cal. 112, [77 Pac. 828].)

She is estopped by her conduct from claiming the other one-fourth interest as well. Although her husband had not power to make a gift of any part of the community property without her written consent, yet he had the power without her consent to make a will giving one half of it to his father and mother. (Civ. Code, sec. 1402.) The facts are that Domenico was in

poor health and was intending to depart for Italy in hope of recovery, and he desired to make some provision for his father and mother in case he did not return. He could at that time have made a will giving them one half of this parcel. Instead of making the provision by that method, he chose to rely upon his wife and transferred it to her upon her promise to carry out his wishes by transferring it to them after his death. To this, with presumed knowledge of his power to do it by will, she agreed. It does not lie in her mouth to say now that if she had then refused to consent he would not have made the same provision by will. And having then by her consent, prevented the making of the disposition by way of devise, she is clearly estopped, now when death has ended his powers, to say that the arrangement made with her consent shall not be carried out because it was not within his power then to carry it out in that mode without her consent in writing. Her allegation in her answer that it was acquired after the marriage, and therefore community property, authorizes the plaintiffs to rely on the estoppel in regard to that claim, without pleading it specially. (Code Civ. Proc., sec. 462; *White* v. *Stevenson*, 144 Cal. 112, [77 Pac. 828] ; *Fox* v. *Tay*, 89 Cal. 344, [23 Am. St. Rep. 474, 24 Pac. 855, 26 Pac. 897] ; *Moore* v. *Copp*, 119 Cal. 432, [51 Pac. 630].)

The evidence is sufficient to sustain the finding that the deed was not made to hinder, delay, or defraud creditors.

Some objections to procedure are made by defendant's counsel which we will briefly consider.

When a witness is testifying, the court may, in its discretion, exclude any or all other witnesses, except in certain cases. (Code Civ. Proc., sec. 2043.) For the purposes of this case we may assume that the court may direct the officer who is taking depositions to exclude other persons while a witness is testifying before him. But, if so, an abuse of discretion must be shown and substantial prejudice must appear probable, to justify an appellate court in reversing a judgment on the merits because of a ruling refusing to direct such exclusion. The court below refused to compel the exclusion of the son of the plaintiff Giuseppe Lauricella, while Giuseppe was giving his deposition before a notary, prior to the trial. The record does not show an abuse of discretion in making the ruling.

The statements made by Domenico, the grantor, to the de-

fendant, in the presence of Joseph Lauricella and Grazia Scafida, respectively, a few weeks after the execution of the deed, stating in substance the terms of the original promise on which it was made to her, and her repetition of the promise, were competent as evidence against her. They were evidently referring to what had occurred between them as an inducement for the execution of the deed, and they were not then making a new agreement. (See *Cooney* v. *Glynn*, 157 Cal. 587, [108 Pac. 506].) The admissions of the defendant made after the death of her husband, were to the same effect and were competent as evidence in corroboration of the other witnesses as to what took place between her and her husband when the deed was made, and immediately before it.

These comprise all the points that we deem it necessary to mention. We find no error in the rulings and decision of the court below.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Henshaw, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.